## LYMAN *against* HALE.

If a tree, the trunk of which stands on the land of *A*, extend some of its branches over, and some of its roots into, the land of *B*, *A* and *B* are not joint owners or tenants in common of such tree; but it is, with such overhanging branches and the fruit thereof, the sole property of *A*; and if *B* gather the fruit from such overhanging branches and appropriate it to his own use, he is liable in trespass to *A*.

THIS was an action of trespass *quare clausum fregit*, alleging, that the defendant, on the 19th of *October*, 1835, entered upon the plaintiff's land, described in the declaration, and gathered, carried away and converted to his own use a great number, viz. twenty bushels, of the plaintiff's pears, growing and being upon a certain pear-tree of the plaintiff standing upon the land described. On the trial before the county court, *November* term, 1835, it was proved and admitted, that at the  time of the alleged trespass, the plaintiff owned and possessed the *locus in quo*; that the defendant, at the same time, as a tenant, was also in the lawful possession of a lot of land adjoining, on the *South* side, to the plaintiff's land, the latter being raised two or three feet above the former; that a pear-tree then was, and for many years had been, standing and growing on the plaintiff's land, a little more than four feet from the line between his land and that occupied by the defendant; that

*Hartford,* June, 1836.

Lyman
*v.*
Hale.

the trunk of this tree at the distance of five feet above the ground, was about seventeen inches in diameter, and grew up perpendicularly about eight feet, and then divided itself into several branches, some of which had extended to some distance across the line and over the defendant's land; and that from these branches the defendant picked and gathered six bushels of pears and converted them to his own use, claiming a right to do so. For the taking and appropriation of these pears, the action was brought.

It was proved, on the part of the defendant, that two of the roots of the tree, one of about two inches in diameter and the other a little smaller, together with several others from an eighth to half an inch in diameter, had entered his land.

The plaintiff offered testimony to prove, and claimed that he had proved, that this tree had, for more than twenty-five years, stood in the same situation in which it did at the time of the alleged trespass, and extended its branches, in like manner, over the defendant's land ; and that, during all that time, the plaintiff had exclusively gathered and appropriated to his own use the pears from the parts of the tree projecting over the defendant's land, as well as from the other parts, and had the sole use and occupancy thereof, claiming exclusive title thereto ; and that neither the defendant, nor those under whom he claimed, had ever gathered the pears, or exercised any right of ownership over the tree, or the fruit thereof, or claimed any title thereto. This claim of the plaintiff, was resisted by the defendant.

The plaintiff claimed, that from the facts proved and admitted, the branches of the tree, which extended over the defendant's land and the pears growing thereon, as well as the other parts of the tree, belonged to him and were his property ; and that the defendant had no right to gather the pears from such projecting branches and appropriate them to his own use, as he had done ; and consequently, that the plaintiff was entitled to recover in this action ; and he requested the court so to charge the jury.

The plaintiff further claimed, that if from the facts proved and admitted, he had no title to the pears gathered by the defendant, yet if the jury should find, that the plaintiff had, for more than fifteen years next before the alleged trespass, exclusively gathered and appropriated to his own use the pears grow-

ing upon the branches projecting over the defendant's land, and exclusively exercised acts of ownership over the tree and such branches, claiming title thereto, he had thereby become the owner thereof, and had the sole property in the pears gathered by the defendant; and requested the court so to instruct the jury.  The defendant claimed, that from the facts proved and admitted, he was either the tenant in common or joint owner with the plaintiff, or the exclusive owner of the pears so gathered by him; and that in either case, he had a right to gather them and appropriate them to his own use, and consequently, that the action could not be maintained; and he requested the court so to charge the jury.  The defendant also resisted the plaintiff's claim to the pears from fifteen years exclusive enjoyment, and requested the court to charge the jury in opposition to such claim.

The court charged the jury as follows:  "The owner of land has not only a right to the soil, but the right, in contemplation of law, includes every thing in a direct line upward to the heavens, and every thing downwards to the centre of the earth.  The owner of the surface of the ground owns all that is over and under it.

"If a tree stand in the division line between two person's lands, they are tenants in common of the tree, or are joint owners of it.  If one plants a tree near the extreme limits of his land, and the roots do not extend into the land of the adjoining proprietor, he who planted it will own the whole tree, although the branches overhang and overshadow the land of the adjoining proprietor; but if the tree so planted, in growing extend its roots into the land of the adjoining proprietor, whereby it derives a portion of its sustenance from the land of both, they are tenants in common of the tree; and the universal practice in *Connecticut* has been for each to take the fruit overhanging his own land.

"As it regards the usage, or the right by possession, the law is, that to obtain it, the person claiming it is bound to shew, by strict proof, that he has had actual, exclusive, uninterrupted and adverse possession, for the period of fifteen years, under a claim of title.  It is also necessary, that the possession should have been definitely marked, and certain, and invariably the same; and if the possession claimed is land, it must be marked by definite boundaries.

" In this case, the court instruct you, that if you find the roots of the tree extended into the land of the defendant, and the branches overhung it, he had a right to gather the fruit on those branches, unless the plaintiff has acquired an exclusive right by possession."

The jury returned a verdict for the defendant ; and the plaintiff, having filed a bill of exceptions, brought a writ of error in the superior court. The judgment of the county court was there affirmed ; whereupon the plaintiff brought the case before this court, by motion in error.

*Hungerford* and *Cone*, for the plaintiff in error, contended, 1. That the parties were not tenants in common of the tree, nor of the fruit. Here it is to be remarked, in the first place, that the authority of 2 *Roll. Rep.* 255. and the case of *Waterman* v. *Soper*, 1 *Ld. Raym.* 738. are not applicable to this case ; inasmuch as in those cases it is to be inferred, that the tree actually grew in the line. But secondly, if these authorities are applicable, they are more than counterbalanced by other authorities, which will be cited under another point. Thirdly, the application of the doctrine of a tenancy in common to this case, would be attended with much difficulty and inconvenience in practice. One person might be owner of a tree in severalty for many years, and then, without any act of his, become a tenant in common of it with another. Trees might become property in common situated at a distance from the line ; and it could never be determined in what proportions the common property should be enjoyed by the parties.

2. That the rule of law *cujus est solum ejus est usque ad cœlum* is not applicable to this case. In the first place, it would be incompatible with the principles by which analogous cases are governed. Secondly, such a rule would be attended with great, if not insurmountable inconvenience in practice. Thirdly, it has not the authority of any decided case to support it.

3. That as the tree in question originally grew upon the plaintiff's land, it was, at the time of the alleged trespass, his property ; and that the title to the pears followed the title to the tree. *Millen* v. *Fandrye, Pop. Rep.* 163. *Masters* v. *Pollie*, 2 *Roll. Rep.* 141. *Norris* v. *Baker*, 3 *Bulstr.* 198. 20 *Vin. Abr.* 417. *Holder* v. *Coates*, 1 *Moo. & Malk.* 112. (22 *Serg. & Lowb.* 264.) 1 *Chitt. Gen. Pr.* 652. By assigning the

ownership of the overhanging branches to the proprietor of the trunk of the tree, a clear and certain rule is furnished, easily reduced to practice ; and the rights of the adjoining proprietors will be defined and precisely known.   If they are annoyed, by such overhanging branches, they are not remediless ; they may treat them as a nuisance, in case the owner of the trunk has not acquired a right to have them remain as they are.

*Hartford,*
June, 1836.

Lyman
*v.*
Hale.

4. That the defendant, by treating them otherwise, has rendered himself liable in trespass.   1 *Chitt. Gen. Pr.* 652.   20 *Vin. Abr.* 418.   *Welsh* v. *Nash*, 8 *East* 394.   *Dyson* & al. v. *Collick*, 5 *Barn. & Ald.* 600. (7 *Serg. & Lowb.* 205.)

5. That the plaintiff acquired a right from length of time to have the branches of the tree continued over the defendant's land.

*Johnson* and *Chapman*, for the defendant in error, contended, 1. That land comprehends every thing in a direct line upwards to the heavens and downwards to the centre of the earth. The owner of the surface owns all that is over and under it. 1 *Sw. Dig.* 73. 3 *Kent's Com.* 401. 2 *Bla. Com.* 19. *Co. Litt.* 5 *a.*

2. That where a tree is planted so near another's close, that the roots project across the line and the branches overhang such close, the proprietor of such close may remove the projection under and above the surface.   3 *Dane's Abr.* 39, 40.  1 *Sw. Dig.* 462. 521.   *Rex* v. *Rosewell*, 2 *Salk.* 459.   *Rosewell* v. *Prior*, 2 *Salk.* 459.   *Sumner* v. *Finegan*, 15 *Mass. Rep.* 280. *Cooper* v. *Marshall*, 1 *Burr.* 265.   *Pickering* v. *Rudd*, 4 *Campb.* 219.

3. That if *A* plant a tree on the extreme limits of his land, and the roots project into and the branches overhang the land of *B*, *A* and *B* are tenants in common of the tree.   *Waterman* v. *Soper*, 1 *Ld. Raym.* 737.   1 *Sw. Dig.* 104. 2 *Stark. Ev.* 1458. n. 3 *Dane's Abr.* 151.

4. That if the plaintiff and defendant are tenants in common, trespass *quare clausum fregit* cannot be maintained.   1 *Sw. Dig.* 514.

5. That a right acquired by fifteen years' uninterrupted adverse possession, must be a right positive, definite, notorious, certain and invariably the same ; and the roots and branches of a tree projecting into and over the land of another, and constantly grow-

ing, cannot be the foundation of such right.    1 *Sw. Dig.* 162, 3. *Watrous* v. *Southworth,* 5 *Conn. Rep.* 311.    *Jackson* d. *Winthrop* v. *Waters,* 12 *Johns. Rep.* 365. 368.    *Jackson* d. *Hardenberg & ux.* v. *Schoonmaker,* 2 *Johns. Rep.* 230. 234. *Brandt* d. *Walton* v. *Ogden,* 1 *Johns. Rep.* 156. 158.    *Proprietors of the Kennebec Purchase* v. *Springer,* 4 *Mass. Rep.* 41.

BISSELL, J.    This writ of error is reserved for our advice ; and the principal question raised and discussed, is, whether, upon the facts disclosed on the record, the plaintiff and defendant are joint owners, or tenants in common, of the tree in controversy.

It is admitted, that the tree stands upon the plaintiff's land, and about four feet from the line, dividing his land from that of the defendant.    It is further admitted, that a part of the branches overhang, and that a portion of the roots extend into, the defendant's land.    If then he be a joint owner of the tree with the plaintiff, he is so, in consequence of one or the other of these facts, or of both of them united.    It has not been insisted on, in the argument, that the mere fact, that some of the branches overhang the defendant's land, creates such a joint ownership. Indeed, such a claim could not have been made, with any well-grounded hope of success.    It is opposed to all the authorities, and especially to that on which the defendant chiefly relies. "Thus" (it is said) "if a house overhang the land of a man, he may enter and throw down the part hanging over, but no more ; for he can abate only that part which constitutes the nuisance.    2 *Roll.* 144. *l.* 30.    *Rex* v. *Pappineau,* 2 *Stra.* 688. *Cooper* v. *Marshall,* 1 *Burr.* 267.    *Welsh* v. *Nash,* 8 *East,* 394.    *Dyson* v. *Collick,* 5 *Barn & Ald.* 600.    (7 *Serg. & Lowb.* 205.)    *Com. Dig. tit.*    Action on the case for a Nuisance. D. 4.    And in *Waterman* v. *Soper,* 1 *Ld. Raym.* 737. the case principally relied on, by the defendant's counsel, it is laid down :  "That if *A* plants a tree upon the extremest limits of his land, and the tree growing extend its root into the land of *B* next adjoining, *A* and *B* are tenants in common of the tree.    But if all the root grows in the land of *A,* though the boughs overshadow the land of *B,* yet the branches follow the root, and the property of the whole is in *A.*"

The claim of joint ownership, then, rests on the fact that the

*Hartford,*
*June, 1836.*

Lyman
*v.*
Hale.

tree extends its roots into the defendant's land, and derives a part of its nourishment from his soil. On this ground, the charge proceeded, in the court below ; and on this, the case has been argued in this court. We are to enquire, then, whether this ground be tenable. The only cases relied upon, in support of the principle, are, the case already cited from *Ld. Raymond*, and an anonymous case from *Rolle's Reports*. (2 *Roll*. 255.) The principle is, indeed, laid down in several of our elementary treatises. 1 *Sw. Dig*. 104. 3 *Stark. Ev*. 1457. n. *Bul. N. P*. 84. But the only authority cited is the case from *Ld. Raymond*. And it may well deserve consideration, whether that case is strictly applicable to the case at bar ; and whether it carries the principle so far as is necessary to sustain the present defence. That case supposes the tree to be *planted* on the " extremest limit"—that is, on the *utmost point or verge* of *A's* land. Is it not then fairly inferable, from the statement of the case, that the tree, when grown, stood in the dividing line? And in the case cited from *Rolle*, the tree stood *in the hedge*, dividing the land of the plaintiff from that of the defendant. Is it the doctrine of these cases, that whenever a tree, growing upon the land of one man, whatever may be its distance from the line, extends any portion of its roots into the lands of another, they therefore become tenants in common of the tree? We think not ; and if it were, we cannot assent to it. Because, in the first place, there would be insurmountable difficulties in reducing the principles to practice ; and, in the next place, we think the weight of authorities is clearly the other way.

How, it may be asked, is the principle to be reduced to practice? And here, it should be remembered, that nothing depends on the question whether the branches do or do not overhang the lands of the adjoining proprietor. All is made to depend solely on the enquiry, whether any portion of the roots extend into his land. It is this fact alone, which creates the tenancy in common. And how is the fact to be ascertained?

Again ; if such tenancy in common exist, it is diffused over the whole tree. Each owns a certain proportion of the whole. In what proportions do the respective parties hold? And how are these proportions to be determined? How is it to be ascertained what part of its nourishment the tree derives from the soil of the adjoining proprietor? If one joint owner appropri-

*Hartford,*
*June, 1836.*

Lyman
*v.*
Hale.

ate all the products, on what principle is the account to be set-
tled between the parties?

Again; suppose the line between adjoining proprietors to
run through a forest, or grove. Is a new rule of property
to be introduced, in regard to those trees growing so near the
line as to extend some portions of their roots across it? How
is a man to know whether he is the exclusive owner of trees,
growing, indeed, on his own land, but near the line; and
whether he can safely cut them, without subjecting himself to
an action?

And again; on the principle claimed, a man may be the ex-
clusive owner of a tree, one year, and the next, a tenant in
common with another; and the proportion in which he owns
may be varying from year to year, as the tree progresses in its
growth.

It is not seen how these consequences are to be obviated, if
the principle contended for be once admitted. We think they
are such as to furnish the most conclusive objections against
the adoption of the principle. We are not prepared to adopt it,
unless compelled to do so, by the controuling force of authority.
The cases relied upon, for its support, have been examined.
We do not think them decisive. We will very briefly review
those, which, in our opinion, establish a contrary doctrine.

In the case of *Masters* v. *Pollie*, 2 *Roll. Rep.* 141. it was
adjudged, that where a tree grows in *A's* close, though the
roots grow in *B's*, yet the body of the tree being in *A's* soil, the
tree belongs to him. The authority of this case is recognised
and approved, by *Littledale*, J., in the case of *Holder* v. *Coates*,
1 *Moo. & Malk.* 112. (22 *Serg. & Lowb.* 264.) He says:
" I remember, when I read those cases, I was of opinion that
the doctrine in the case of *Masters* v. *Pollie* was preferable to
that in *Waterman* v. *Soper;* and I still think so."

The same doctrine is also laid down, in *Millen* v. *Fan-
drye, Pop. Rep.* 161. 163. *Norris* v. *Baker*, 3 *Bulstr.* 178.
See also 20 *Vin. Abr.* 417. 1 *Chitt. Gen. Pr.* 652. We
think, therefore, both on the ground of principle and authority,
that the plaintiff and defendant are not joint owners of the tree;
and that the charge to the jury, in the court below, was, on
this point, erroneous.

It is, however, contended, that although the charge on this
point was wrong, there ought not to be a reversal, as upon

another ground the defendant was clearly entitled to judgment in his favour.

It is urged, that land comprehends every thing in a direct line above it; and therefore, where a tree is planted so near the line of another's close that the branches overhang the land, the adjoining proprietor may remove them. And in support of this position, a number of authorities are cited. The general doctrine is readily admitted; but it has no applicability to the case under consideration. The bill of exceptions finds, that the defendant gathered the pears growing on the branches which overhung his land, and converted them to his own use, claiming a title thereto. And the charge to the jury proceeds on the ground that he has a right so to do. Now, if these branches were a nuisance to the defendant's land, he had clearly a right to treat them as such, and as such, to remove them. But he as clearly had no right to convert either the branches or the fruit to his own use. *Beardslee* v. *French*, 7 *Conn. Rep.* 125. *Welsh* v. *Nash*, 8 *East* 394. *Dyson* v. *Collick*, 5 *Barn. & Ald.* 600. (7 *Serg. & Lowb.* 205.) 2 *Phill. Ev.* 138.

On the whole, we are of opinion, that there is manifest error in the judgment of the court below, and that it be reversed.

The other Judges ultimately concurred in this opinion; WILLIAMS, Ch. J. having at first dissented, on the ground of a decision of the superior court in *Hartford* county, (*Fortune* v. *Newson*,) and the general understanding and practice in *Connecticut* among adjoining proprietors.

Judgment reversed.