HERBERT W. WEISEL, APPELLANT, v. BERDINE EDITH HOBBS ET AL., APPELLEES.

294 N. W. 448

FILED OCTOBER 25, 1940. No. 30876.

*T. R. P. Stocker* and *Ralph W. Ford,* for appellant.

*Roland Max Anderson, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

PAINE, J.

Plaintiff and appellant sought by injunction to restrain defendants and appellees from cutting down a large ornamental shade tree. Defendants by cross-petition asked that plaintiff's garage be moved back to lot line. Trial court found for defendants, and dissolved the temporary restraining order, finding that said tree was entirely upon the real estate of defendants. The court also required plaintiff to remove the garage, which encroached upon the lot of defendants.

The petition alleged that defendants Hobbs are the record owners of lots 37 and 38, block 2, Arlington Heights addition, being on the north side of Franklin street, in the block east of Twenty-seventh street, in Lincoln; that upon the boundary line between lots 38 and 39 there is located a large, valuable, ornamental shade tree, which the defendants threaten to cut down and destroy, and, if this is done, plaintiff will suffer irreparable injury. Plaintiff secured a temporary order of injunction, which restrained the defendants from removing said tree.

The defendants filed a general denial to the allegations of the petition, and added a cross-petition, alleging that

they had been the record owners of said lots 37 and 38, in block 2, Arlington Heights addition, continually since December 1, 1926; that such lots cover an area of 50 feet on Franklin street and 132 feet north and south, and that the plaintiff's garage extends approximately two feet over their east lot line. Defendants allege that, because of an oral agreement, said garage building has been subject to removal from the property of these answering defendants, and they do now request that plaintiff forthwith remove said garage building off lot 38, as the location of the garage constitutes a cloud upon the title of their property.

To this answer and cross-petition, plaintiff filed a reply, which was a general denial, and alleged that the garage building was built by the predecessor of the plaintiff in the chain of title; that plaintiff purchased the premises now occupied by him, and long prior to the time that defendants had any connection whatsoever with the property now claimed to be owned by them; that said garage was built in the open, and with full knowledge and consent, and without objection of the then owner of the adjoining property, who suffered the predecessor of the plaintiff to expend the money necessary for the erection of said garage, making no objections thereto; that said garage was erected upon a permanent concrete foundation, and that plaintiff's predecessor and the plaintiff each asserted claim to said property for more than ten years last past, and have at all times been in actual, open, notorious, continuous, exclusive, undisturbed, hostile, and adverse possession, and claiming ownership and entire title to the real estate located beneath said garage, and have paid all of the taxes assessed against the same, and have exercised all the ordinary, customary, and usual rights of ownership with respect to said real estate. Plaintiff further denies that there was ever any agreement, oral or otherwise, entered into between the parties, by which plaintiff agreed, upon request, to remove or change the location of the garage, and prays that the title to the real estate be quieted in him.

The defendants, for a reply to the answer of plaintiff to

the defendants' cross-petition, allege that, prior to the time defendants purchased lots 37 and 38, and as inducement for them to do so, plaintiff orally stated to defendants that the garage on his lot extended over on lot 38, and that if at any time the owner of lot 38 wanted it moved the plaintiff would do so, and relying on such statement defendants purchased the lot.

The various issues involved in these pleadings were tried to the court without a jury. The evidence was taken, written briefs were filed, and a decree was entered finding for the defendants on their answer and also on the cross-petition. The restraining order was dissolved. The court found that the large shade tree, and all parts thereof which determine ownership, is entirely upon the real estate of the defendants, and their sole and separate property; that the location of the garage on a part of lot 38 was a permissive use thereof by the owners of said lot, and not at any time hostile or adverse to the title of the defendants, and the plaintiff was required to remove said garage at his own expense on or before October 2, 1939, and all costs of the case were taxed to the plaintiff.

Having briefly reviewed the pleadings and the decree of the lower court, we will now consider evidence relating to the points at issue. Plaintiff testified that his house is a small bungalow, with a low roof; that the branches from this tree are the only shade that he has from the west sun, and that the sunshine has been terrific for the last years, and without the tree it would be almost unbearable; that the tree is thrifty and healthy at the present time.

Plaintiff further testified that the first he knew of the defendants' attempt to destroy or cut down the tree was when they telephoned to him that some one was on the garage and had started to cut the limbs down; that he then telephoned to have the man doing the cutting brought into his house so he could talk to him, and he insisted that the work should stop, and the man said he did not see any sense in cutting down the tree anyway, and stopped, and that evening he talked two hours with defendant Hobbs; that

as he left Hobbs' home that night plaintiff asked if Hobbs would not leave the tree alone, and he said he could not do that, and plaintiff asked him to telephone him if he changed his mind about cutting the tree down, and as he did not hear from him there was nothing left to do the next morning but employ an attorney and get an injunction to keep the defendants from cutting down the tree. The defendants deny the correctness of this report of their conference.

The exact location of this shade tree at the date of the trial is the point most sharply in dispute in the evidence. The defendants employed a deputy in the county engineer's office, who made his latest survey about a year and eight months before the trial, to wit, on February 3, 1937, and testified that the face of the tree was .17 west of the east line of lot 38, which would place the trunk entirely upon the land of defendants.

The plaintiff introduced a picture, exhibit No. 22, which was taken about 5:00 p. m. on the same day, and after this survey was made, and which shows that the driveway and the base of the tree were covered with ice and snow, and that the snow had not been cleared away from the bottom of the tree. The deputy who made the survey was asked on cross-examination: "Q. It was all covered with ice and snow, was it not? A. No; not that I recall. Q. Isn't it a fact there were several inches of snow on most of that land when you made that survey? A. I don't recall that. Q. Do your field notes disclose what the condition was? A. No. Q. Do you have any independent recollection what the condition was? A. No; I don't."

The law, according to the latest holdings, is determined by the exact location of the trunk of the tree at the point it emerges from the ground, and this cross-examination leaves some doubt on the important point in issue.

On the other hand, the plaintiff produced as his witness Wardner J. Scott, a registered professional engineer, who has been in business in Lincoln for himself since 1920, and who testified that on Thursday before the trial started on October 17, 1938, he was employed to survey lots 38 and 39,

Arlington Heights addition, especially with regard to the west lot line of lot 39, and show the location of a large cottonwood tree thereon. He testified that he was able to observe the base of the tree where it entered the ground at the edge of the concrete drive along the lot line; that he used a copy of the original plat, using the monuments at Twenty-seventh and Franklin, and also at Twenty-seventh and Sumner. He testified that the west edge of the cement driveway on lot 39 is the west line of the lot, and that the driveway at the point where the tree is located was exactly on the lot line.

To add to the uncertainty of the two surveys, it was brought out that, between the fixed monuments used to survey this line, there is an excess, which must be apportioned relatively between the various lots.

The plaintiff testified that the tree had grown until it had upheaved the block of cement of the driveway. Several years ago, when no dispute had arisen between these parties, they decided it was necessary to fasten the large branches of this tree together, so there would never be any danger of breakage, and they installed separate cables between the branches, and the plaintiff and the defendant not only did the work together, but shared the expense, each paying one-half, for the necessary turnbuckles and cables. Several years after the tree was thus braced in its upper branches, the plaintiff and defendant together made an examination and found that the braces were cutting in on the tree. They thereupon loosened up the turnbuckles and cables and put in boards and pieces of automobile tires underneath to protect the tree. As dirt was accumulating in the crotch, they dug the dirt out and put in asphalt to protect the tree. Plaintiff testified that there was no decay there at the time, but there was a possibility of disease starting there, with which defendant does not agree, and claims it had split. Plaintiff testified that there are two main branches and two minor branches coming over the flat roof of his house, and only one minor branch goes over the defendant's house.

The growth of the law exhibits several changes during the years, for it was held in 1789 that a tree belongs to the person in whose land the roots grow, and Chief Justice Holt said: "If A. plants a tree upon the extremest limits of his land, and the tree growing extend its root into the land of B. next adjoining, A. and B. are tenants in common of this tree." *Waterman v. Soper,* 1 Ld. Raym. 737. But, in a much earlier case, *Masters v. Pollie* (1620) 2 Rolle, 141, 81 Eng. Reprint, 712, it was held (the opinion being in Latin, French and English) that, where a tree grows in A's close, though the roots grow in B's, yet, the body of the tree being in A's soil, the tree belongs to him. 18 A. L. R. 655, Ann. See, also, *Lyman v. Hale,* 11 Conn. 177, 27 Am. Dec. 728.

"The ownership of a tree standing wholly on the land of one owner, although its roots or branches extend into or over the land of another, is vested in the person on whose land the tree stands, and the adjoining owner has no property in it." 2 C. J. S. 33, sec. 37, citing *Wideman v. Faivre,* 100 Kan. 102, 163 Pac. 619; *Cobb v. Western Union Telegraph Co.,* 90 Vt. 342, 98 Atl. 758, Ann. Cas. 1918B, 1156; 1 C. J. 1232, note 23.

In *Griffin v. Bixby,* 12 N. H. 454, it was said: "A tree, standing directly upon the line between adjoining owners, so that the line passes through it, is the common property of both parties, whether marked or not; and trespass will lie if one cuts and destroys it without the consent of the other." See, also, *Phillips v. Brittingham,* 2 Boyce (Del.) 173, 77 Atl. 964; *Dubois v. Beaver,* 25 N. Y. 123, 82 Am. Dec. 326.

"An injunction will be granted to prevent one adjoining owner from injuring or destroying trees that are growing on the boundary line, even though the owner suing for the injunction had previously destroyed a part of the trees." 1 Am. Jur. 540, sec. 59. This statement appears to be founded upon the case of *Musch v. Burkhart,* 83 Ia. 301, 48 N. W. 1025, in which case it was held that, where trees grow on the boundary line between tracts of land, and serve to shelter and protect the building of one of such owners, the

other owner may be enjoined from cutting them down, even though their presence is a damage to his land.

"An injunction may be issued to restrain a threatened removal or destruction of a tree on a boundary line where no sufficient reason for the commission of the act appears; and whether such destruction is reasonable or otherwise is a matter of discretion with the trial court." 2 C. J. S. 36, sec. 40.

In the case at bar, where the trunk of the tree impinges upon the lot line, and when the respective owners have for years jointly cared for the tree, and divided the expenses of protecting it from the ravages of time and the elements, then each has an interest in the tree sufficient to demand that the owner of the other portion shall not destroy the tree. *Lennon v. Terrall*, 260 Mich. 100, 244 N. W. 245; *Robinson v. Clapp*, 65 Conn. 365, 32 Atl. 939, 29 L. R. A. 582; 1 Washburn, Real Property (6th ed.) 13, sec. 14.

"Every one has the right to any beneficial use he may see fit to make of his own property, if the benefit he seeks is not out of all reasonable proportion to the injury caused to another." *Bush v. Mockett*, 95 Neb. 552, 145 N. W. 1001. In this opinion is quoted the following: " 'No one ought to have the legal right to make a malicious use of his property for no benefit to himself, but merely to injure his fellow man. To hold otherwise makes the law an engine of oppression with which to destroy the peace and comfort of a neighbor, as well as to damage his property for no useful purpose, * * *.' *Barger v. Barringer*, 151 N. Car. 433." See, also, 25 L. R. A. n. s. 831.

In our opinion, each of the parties has an interest in this shade tree. The evidence of the defendants is that it is a nuisance, that the leaves clutter up their lawn and require many rakings, and that, because of its propensity to split and fall, it is dangerous, and should be removed. The evidence of the plaintiff, as to the great value of this tree to him in shading his flat roof in the summer, must be weighed, but under the present state of the case the evidence warrants a permanent injunction against its arbitrary destruc-

tion by the defendants, and the trial court is reversed as to this feature of the case.

We will now consider the encroachment of plaintiff's garage for two feet upon the defendants' land.

It was stipulated that Dorothy Maude Weisel received the title to lots 39 and 40 by deed dated May 31, 1924, at which time a house and garage were already there, and that she died June 12, 1933, and that the property descended by will to Dr. Weisel. It is stipulated that the defendants Hobbs received title to lots 37 and 38 by warranty deed dated April 19, 1926.

The testimony of both of the defendants is that in April, 1926, before they had purchased the property, they drove out to look it over, and the plaintiff came over to their car in the street, and urged them to buy the property and build upon it; that, at that time and place, Dr. Weisel, the plaintiff, said in substance: I want to tell you that the garage back there is over this line a few inches, but any time the owner of this property demands, I will move it; it will be some inconvenience, but I will move it. He also said, I have an agreement with the former owner of this property he will pay me for the moving of this garage if the owner of this property demands it be moved.

The plaintiff denies that he made this promise, but the defendants testified positively that he did, and said they bought this property relying on this agreement.

While the plaintiff's wife was the owner of the property at the time of this conversation which the weight of the evidence supports, yet upon her death the property passed by will to the plaintiff, and he is estopped by his promise so made from availing himself of the defense of adverse possession for ten years.

It is a well-settled rule that admissions of a party against interest, made with reference to, and pertinent to, the issues being tried, are admissible in evidence against such party, and proof thereof will work an estoppel *in pais*. *Gentry v. Burge*, 129 Neb. 493, 261 N. W. 854; *Resnick v. Kazakes*, 123 Neb. 654, 243 N. W. 861.

"Disclaimer of Title. An occupant's disclaimer of title prior to the running of limitations precludes his acquisition of title by adverse possession unless he thereafter claims and holds for the statutory period." 2 C. J. S. 575, sec. 57.

The leaving of the garage on defendants' land was but a permissive use of the land. Possession by permission of the owner can never ripen into title by adverse possession until after such change of position has been brought home to adverse party.

From an examination of the evidence and the law, the trial court's order that the garage be moved was correct, and plaintiff is given 60 days from the issuance of the mandate herein to move the garage, as directed in the decree of the district court.

AFFIRMED IN PART AND REVERSED IN PART.