LOU ANN PATTERSON, APPELLEE, v. RAYMOND R. OYE AND JEANETTE E. OYE, APPELLANTS.

333 N.W.2d 389

Filed April 29, 1983. No. 82-084.

Owen A. Giles, for appellants.

Jonathan R. Breuning of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

KRIVOSHA, C.J., BOSLAUGH, MCCOWN, WHITE, HASTINGS, and CAPORALE, JJ., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

The District Court restrained defendants, Raymond R. Oye and Jeanette E. Oye, from further removing bushes growing on a common boundary line between them and plaintiff, Lou Ann Patterson, and assessed $400 in trespass damages against defendants. Raymond had removed about 48 feet of bushes at the north end of the boundary line before plaintiff objected. Efforts to compromise failed, and this suit followed.

Plaintiff alleges a cause of action in trespass for damages and a second cause for injunctive relief. The case was presented to and considered by the court on equitable principles, *Hein v. M & N Feed Yards, Inc.*, 205 Neb. 691, 289 N.W.2d 756 (1980), and full relief of all issues was given. *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978).

The principal question is whether the parties share common ownership in the row of bushes along or near their common boundary line.

There is little conflict in the following. The parties own and occupy abutting residential properties in Omaha, Nebraska, in an area developed in 1955. The Patterson property is at 218 South 94th Street, and defendants' property is directly west at 219 South 95th Street. Their backyards abut on a straight 132-foot north-south line. Plaintiff's property is higher at the boundary line. Truman Clare built plaintiff's house in 1955 and sold it to plaintiff in 1972. In 1956 defendants' grantor, Elmer V. Larsen, completed defendants' house; at that time there was no landscaping at or near the common boundary line. Larsen planted lilac bushes and bridal wreath on the south one-third of the boundary line. Clare

planted grass up to the boundary line; he said the bushes were planted on the boundary line. Both Larsen and Clare said that the bushes contributed to their privacy and it improved the general appearance of their properties. When Larsen sold his property in 1973, the bushes were at least 6 feet high, and they had spread out by natural volunteer growth. At that time other forms of vegetation and bushes grew in the line of bushes. Clare said that he did some maintaining and trimming of the bushes; however, it was permissive and he never claimed ownership. A registered land surveyor established the location of the true boundary line as shown on exhibits.

From other evidence in conflict, the court could find the removed bushes had been growing on the boundary line. At the time of trial in September 1981, the remaining bushes were 12 to 18 inches in diameter at the base growing on the boundary line, untrimmed, spread out, and intermingled with other bushes, vegetation growth, and trees. There was expert evidence that the expense of replacing the bushes was from $300 to $1,500. Between 1973 and August 1, 1977, both parties cared for and maintained the bushes; plaintiff's care was limited. Plaintiff considered the bushes to be growing on the boundary line and that they were common property; she said that they provided privacy and they added to the aesthetic value of the property. Defendants claimed that they owned the bushes since their grantor had planted them, that they had done most of the caring for the bushes, and that in 1973 plaintiff told Raymond that she thought the hedge was his. Defendants described the bushes as ugly; there is some evidence that Raymond intended to destroy the remaining bushes and build a rock wall along the boundary line in order to divert drainage water from plaintiff's property. At the time of trial, neither party had planted any replacement shrubs in the boundary line area.

Defendants claim as a defense that they owned the bushes since they were planted and growing on their side of the boundary line, citing *Jurgens v. Wiese*, 151 Neb. 549, 38 N.W.2d 261 (1949). The evidence does not support that defense.

" 'A tree, standing directly upon the line between adjoining owners, so that the line passes through it, is the common property of both parties, whether marked or not; and trespass will lie if one cuts and destroys it without the consent of the other.' . . .

" 'An injunction will be granted to prevent one adjoining owner from injuring or destroying trees that are growing on the boundary line . . . .' " *Weisel v. Hobbs*, 138 Neb. 656, 662, 294 N.W. 448, 451 (1940). See, also, Annot., 26 A.L.R.3d 1372 (1969).

In *Weisel* our court said at 663, 294 N.W. at 452: "In the case at bar, where the trunk of the tree *impinges* upon the lot line, and when the respective owners have for years jointly cared for the tree, and divided the expenses of protecting it . . . then each has an interest in the tree sufficient to demand that the owner of the other portion shall not destroy the tree." (Emphasis supplied.) Further, in *Weisel* the court considered the interests of the parties in the tree, and their equities. One party claimed the tree was a nuisance and dangerous and the other party said the tree provided needed shade. The court concluded that the equities favored shade benefits.

"An injunction will not be granted unless the right is clear, the damage irreparable, and the remedy at law inadequate to prevent a failure of justice." *Muchemore v. Heflin*, 187 Neb. 217, 219-20, 188 N.W.2d 713, 714 (1971).

" 'Equity cases are heard de novo by this court. In determining, however, the weight to be given the evidence, this court will consider the fact that the trial court observed the witnesses and their manner of testifying.' " *Rudolph v. Hartung*, 202 Neb. 678, 686, 277 N.W.2d 60, 64 (1979).

We find that on August 1, 1977, plaintiff and de-

fendants owned in common the bushes growing on their common boundary line and that defendants wrongfully removed and destroyed about 48 feet of those bushes, for which the trial court properly assessed $400 in damages. We further find that defendants may harm, damage, or destroy some or all of the remaining bushes growing on the boundary line, which would cause irreparable damage to plaintiff and unnecessary litigation, and that the terms of the court's injunction are equitable.

Defendants argue that the injunction terms, restraining them from "damaging or destroying the hedge currently existing . . . or any hedges subsequently planted thereon, or taking any actions whatsoever which are unreasonably dangerous to the continued good health and existence of such hedges or taking any actions whatsoever in violation of Plaintiff's joint ownership interest . . .," will impose years of unreasonable future hardship and abuse from plaintiff. Defendants are reminded that the law provides avenues of relief in the event they feel aggrieved. Where there is a change of circumstances they may apply to the court to vacate or modify the decree. *Board of County Commissioners v. Scott*, 178 Neb. 53, 131 N.W.2d 711 (1964). Whenever there is a question of interpreting the terms of the injunction decree, they can and should apply to the court for direction. *Kasparek v. May*, 174 Neb. 732, 119 N.W.2d 512 (1963).

Defendants' other claimed error was not supported by authority, and it is without merit.

AFFIRMED.