JOHN P. RIDGE *et al.*, Plaintiffs-Appellants, v. WILLIAM BLAHA *et al.*, Defendants-Appellees (Berquist Tree Experts, Inc., Defendant).

Second District   No. 2—86—0833

Opinion filed February 19, 1988.

Kathleen P. Konicki and John P. Ridge, both of Lockport, appellants *pro se.*

No brief filed for appellees.

JUSTICE DUNN delivered the opinion of the court:
Plaintiffs, John P. Ridge and Kathleen P. Konicki, sought an order enjoining defendants, William and Lorie Blaha, from damaging an elm tree allegedly growing on the boundary line between their respective

properties. The circuit court of Du Page County found that plaintiffs have no protectable interest in the elm and denied the relief sought. After reviewing the record, however, we find that plaintiffs do have a protectable interest in the subject tree, and, accordingly, we now reverse.

Plaintiffs and defendants are neighbors in the Village of Hinsdale, Illinois. Between their houses grows the 60- to 80-foot tall elm tree in question. The tree interrupts a boundary line fence which was installed by defendants. The parties do not know who planted the tree, but it is estimated to be 40 years old.

After coexisting with the elm for many years, defendants eventually tired of what they consider to be the tree's unwanted effects and decided to remove it with the help of Berquist Tree Experts, Inc. Plaintiffs were not consulted in this decision, however, and when Berquist came to remove the tree, plaintiffs objected that the tree belonged to them and that they did not want it destroyed. Plaintiffs called the Hinsdale police, who at first persuaded Berquist to refrain from cutting. Mrs. Blaha then offered to indemnify Berquist if Berquist would remove the tree, so the Berquist crew began their assault. After consulting with the State's Attorney's office, though, the police ordered the Berquist crew to remove itself from the tree or face arrest. When it later appeared that the police and the State's Attorney would be reluctant to further intervene unless plaintiffs obtained injunctive relief, the instant action was filed.

Plaintiffs initially sought a temporary restraining order and a preliminary injunction to prevent defendants from damaging the elm, and on July 18, 1986, a preliminary injunction was issued. Proceedings were continued to August 14, 1986, for resolution of the matter. Plaintiffs filed an amended petition seeking a permanent injunction on August 11, which included a second count pertaining to a honey locust tree whose base was entirely within plaintiffs' property but whose branches extended into defendants' air space. On August 14, a hearing was held on whether to make the preliminary injunction permanent. Although plaintiffs protested that defendants had not yet filed an answer, the court informed plaintiffs that the preliminary injunction would be dissolved that day anyway.

The majority of the testimony at the hearing concerned the elm tree. Plaintiffs testified that the tree shades their property and is aesthetically pleasurable to them, thereby adding to their use and enjoyment of their property. They believe that the tree adds to the value of their property. Additionally, plaintiffs asserted that they bought their house for the mature trees their lot contained. Defendants, on the

other hand, testified that the elm drops sap on their cars and property and that its branches interfere with their chimney and television antenna. They claimed that the tree's base had displaced bricks in their walkway leading to puddling in heavy rains, and that the root system made it impossible to maintain plantings near the tree. They also had been told that the roots will eventually harm the foundation of their house.

More importantly, evidence of the tree's location with respect to the boundary line was introduced. Defendants produced a survey which indicated that the base of the tree extends approximately five inches onto plaintiffs' property, but that the tree trunk narrows as it rises so that at a height of 1.25 feet, the trunk is entirely on defendants' side of the line. Photographs were also introduced which depicted the tree interrupting the boundary line fence. At the conclusion of the hearing, the trial court found that no substantial portion of the elm's trunk extended onto plaintiffs' property and that, as such, plaintiffs did not have a protectable ownership interest in the tree. The court also found that the issues raised concerning the honey locust were moot since that tree had already been trimmed to defendants' satisfaction, and there was no pending danger to that tree. The court dissolved the preliminary injunction, but stayed actions until August 21, 1986. On that date, plaintiffs filed a motion for reconsideration. On September 4, 1986, the motion was denied, but a stay pending appeal was granted.

Plaintiffs argue on appeal that the evidence shows the elm is located on the boundary line and that it is therefore the common property of the adjoining landowners. Defendants, however, have not seen fit to file a brief with this court. Nevertheless, we will not reverse *pro forma*, but will consider the merits of the appeal under the standards enunciated in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

■ As a starting point, it is clear that a boundary line tree may be jointly owned by the adjoining landowners:

> "It is the well-established rule that a tree standing on the division line between adjoining proprietors, so that the line passes through the trunk or body of the tree above the surface of the soil, is the common property of both proprietors as tenants in common." 1 Am. Jur. 2d *Adjoining Landowners* §22 (1962).

This general rule was followed in Illinois in *Simpson v. City of Gibson* (1911), 164 Ill. App. 147. In that case, a property owner sought damages for the removal of trees which had grown on the

boundary between her property and a city street. In holding that the property owner was entitled to compensation, the court stated that "[a] tree located on the boundary line between a street and private property is the joint property of the city and the property owner." (164 Ill. App. at 149.) The *Simpson* court further indicated its adherence to the general rule, noting "[i]t has been universally held that trees growing upon a boundary line are the joint property of the adjoining owners." (164 Ill. App. at 149.) Although not specifically addressed, this rule was also followed in *Kimber v. Burns* (1912), 253 Ill. 343, where the defendant cut down two shade trees located on the boundary between his property and the plaintiff's. In that case, interestingly enough, the evidence showed that one of the trees was only 7½ inches on plaintiff's lot and 22 inches on defendant's lot, and the other was eight inches on plaintiff's lot compared to 22 inches on defendant's lot, yet the court held that defendant wrongfully removed the trees. 253 Ill. at 344.

In deciding whether a tree is actually on a boundary line, courts applying the general rule have usually looked to the location of the trunk of the tree rather than its roots or branches. (*Robinson v. Clapp* (1895), 65 Conn. 365, 380, 32 A. 939, 942; *Luke v. Scott* (1933), 98 Ind. App. 15, 18, 187 N.E. 63, 64; *Weisel v. Hobbs* (1940), 138 Neb. 656, 660-61, 294 N.W. 448, 450-51.) Due to practical considerations, the fact that a tree's roots alone cross a boundary line is insufficient to create common ownership, even though the tree thereby derives part of its nourishment from both parcels. (*Lyman v. Hale* (1836), 11 Conn. 177, 183.) The critical question in this case, then, is whether any portion of the trunk of the elm tree grows on plaintiffs' property. Plaintiffs' argue that a tree's "trunk" is the above-ground portion of the main stem, while "roots" are the parts of the tree which are below the surface of the soil. This argument comports with the dictionary definitions of the two words (Webster's New World Dictionary 1236, 1527 (2d ed. 1986)) and with judicial interpretations. As was stated by the Nebraska Supreme Court in *Weisel v. Hobbs*, "The law, according to the latest holdings, is determined by the exact location of the trunk of the tree *at the point it emerges from the ground*." (Emphasis added.) *Weisel*, 138 Neb. at 660-61, 294 N.W. at 450-51.

■ Whether a tree's trunk straddles a boundary line is, of course, a question of fact, but from the evidence introduced in this case, it appears that part of the elm's trunk is on plaintiffs' property. The survey and the photographs indicate that, at the point where the tree emerges from the ground, it extends more than four inches over the boundary line. We are aware that the greater portion of the trunk

lies on defendants' side of the boundary, but previous cases dealing with this issue have not required a certain percentage of the tree to be across the line before joint ownership arises, but, in fact, they have found joint ownership where a small portion of the trunk is on one party's property. In *Kimber v. Burns*, as noted above, the trees in question extended only seven inches onto plaintiff's property compared to 22 inches on the defendant's side, yet the court held that the plaintiff had a protectable interest. (*Kimber*, 253 Ill. at 344.) Furthermore, although the survey indicates that the elm's trunk narrows as it rises so that at a height of 1.25 feet it is entirely on defendants' side of the boundary, it is at ground level that the trunk begins. (*Weisel*, 138 Neb. at 660-61, 294 N.W. at 450-51.) As plaintiffs note, most trees do not enter the ground with vertically parallel lines, but rather they widen somewhat at their bases. And, while there was some mention by Mrs. Blaha at the hearing that soil may have been removed from the base of the tree on plaintiffs' side of the line, she admitted that she had no knowledge of plaintiffs ever removing soil. Plaintiffs, in fact, testified to the contrary that the soil depth around the tree had not changed since they purchased their home. Likewise, the photographs show no indication of excavation in order to expose the tree below ground level.

Although it thus appears that a portion of the elm's trunk grows on plaintiffs' property, the trial court was of the opinion that that fact alone was not sufficient to give plaintiffs a protectable interest in the tree. In reaching this decision, the trial court relied on two cases which hold that joint ownership is created only if a tree is planted jointly or jointly cared for, or if it is treated as a partition between adjoining properties. (*Rhodig v. Keck* (1966), 161 Colo. 337, 421 P.2d 729; *Holmberg v. Bergin* (1969), 285 Minn. 250, 172 N.W.2d 739.) After reviewing those cases, however, we are not persuaded by the reasoning contained therein, so we decline to impose their limitation on the general rule.

In *Rhodig*, plaintiffs mistakenly planted trees so that most or all of the trunks were on defendant's property. When defendant removed the trees, plaintiffs sought compensation. The court held, logically enough, that the plaintiffs could not affix something to their neighbor's land and then claim ownership rights without some agreement, right, estoppel or waiver. (*Rhodig*, 161 Colo. at 339, 421 P.2d at 730-31.) The court went on, however, to state that for *all* boundary line trees, joint ownership does not arise unless they are planted jointly, jointly cared for, or were treated as a partition. (161 Colo. at 340, 421 P.2d at 731.) The cases on which the *Rhodig* court relied, though,

*Weisel v. Hobbs* (1940), 138 Neb. 656, 294 S.W. 448, and *Hancock v. Fitzpatrick* (1914), 183 Mo. App. 220, 170 S.W. 408, do not support imposition of that requirement.

In *Weisel,* plaintiff sought to enjoin his neighbor from destroying a boundary line tree. It appeared, however, that the tree was located entirely on the defendant's property. Nevertheless, the *Weisel* court found that since both plaintiff and defendant had jointly gone to considerable lengths to care for the tree, the plaintiff had "an interest in the tree sufficient to demand that the owner of the other portion shall not destroy the tree." (*Weisel,* 138 Neb. at 662, 294 N.W. at 452.) *Weisel* thus stands for the proposition that an agreement or course of conduct can give one party a protectable interest even if the subject tree is not actually on a boundary line, but not for the proposition that such agreement is necessary when the tree is actually on the line. Nor does *Hancock* require an agreement for boundary line vegetation to be jointly owned. In that case, like *Weisel,* it was held that an agreement gave co-ownership rights, but the court there did not address whether boundary line trees are jointly owned in the absence of an agreement. (*Hancock,* 183 Mo. App. at 222, 170 S.W. at 409.) In declining to follow *Rhodig,* we also note that two justices dissented from that holding, preferring instead to apply the general rule as stated above. We likewise decline to follow *Holmberg v. Bergin* (1969), 285 Minn. 250, 172 N.W.2d 739, which imposed a similar requirement for joint ownership. *Holmberg* is the only case to have followed *Rhodig,* and *Holmberg* itself has not been further cited as authority.

█ ■ Under the principles set forth above, we hold that plaintiffs have a protectable interest in the elm tree, since part of its trunk grows on their property. The extent of this interest has been described as "equal, in the first instance, to, or perhaps rather identical with, the part which is on [their] land; in the next place embracing the right to demand that the owner[s] of the other portion shall so use [their] part as not unreasonably to injure or destroy the whole." (*Robinson v. Clapp* (1985), 65 Conn. 365, 380, 32 A. 939, 942.) Given this interest, the trial court should have enjoined defendants from destroying the elm. "*An injunction* may be issued to restrain a threatened removal or destruction of a tree on a boundary line where no sufficient reason for the commission of the act appears ***." (Emphasis in original.) (2 C.J.S. *Adjoining Landowners* §57 (1972); see also *Patterson v. Oye* (1983), 214 Neb. 167, 170, 333 N.W.2d 389, 391.) From the evidence introduced here, we see no sufficient reason to destroy the elm (see *Bandy v. Bosie* (1985), 132 Ill. App. 3d 832; *Merriam v. McConnell* (1961), 31 Ill. App. 2d 241), although we express

no opinion on whether such would be the case in the event that defendants are able to prove by competent evidence that the tree actually threatens certain imminent damage to the foundation of defendants' house. For the present, we believe injunctive relief is especially appropriate here due to the subject matter of the controversy. It is unlikely that a mature elm tree can be replaced without great expense, if at all. The benefit to plaintiffs in terms of the comfort and satisfaction they derive from the tree cannot accurately be measured on a pecuniary scale. We caution, however, that the injunction to be issued "should not be so broadly worded as to restrain defendant[s] from cutting limbs which cause [them] damage where such cutting would not in any way interfere with the use of the [tree] by plaintiff[s]." 2 C.J.S. *Adjoining Landowners* §57 (1972); see also *Robinson v. Clapp* (1895), 65 Conn. 365, 380, 32 A. 939, 942.

We turn briefly now to certain other issues raised by plaintiffs. Plaintiffs had also sought an injunction to restrain defendants from trimming branches on the honey locust tree. Prior to the hearing, however, certain branches which had threatened damage to defendants' property were trimmed to defendants' apparent satisfaction, so the court declared the issue moot. We believe this ruling was correct since no controversy existed. In any event, it would not have been proper to restrain defendants from trimming overhanging branches which cause them damage. (See, *e.g.*, *Robinson*, 65 Conn. at 380, 32 A. at 942; *Luke v. Scott*, 98 Ind. App. at 18, 187 N.E. at 64.) Furthermore, we are of the opinion that the trial court correctly dismissed Berquist as a defendant, since Berquist is an essentially disinterested party. We need not address the remaining complained-of errors due to our holding that an injunction should issue with respect to the elm tree.

For the foregoing reasons, the order of the circuit court of Du Page County is affirmed in part and reversed in part, and the cause is remanded with directions to enter an injunction phrased consistently with this opinion.

Affirmed in part; reversed in part and remanded.

HOPF and INGLIS, JJ., concur.