# R. M. JOHNSON, Appellant, v. JOSEPH FIALA et al., Respondents.

### Springfield Court of Appeals, February 5, 1912.

1. **FENCES: Partnership Fences: Cutting Hedge Fence: Damage to Crop.** In an action for damages against defendant for wrongfully cutting a hedge fence, which plaintiff claimed belonged to him, and for throwing the branches on wheat belonging to plaintiff and his tenant, the evidence is examined and *held* sufficient to justify the trial court in finding that the fence was a partnership fence between the land of plaintiff and defendant and that plaintiff had no interest in the wheat, but that under the testimony it belonged to the tenant.

2. **APPEAL - AND ERROR: Issue of Facts: Finding of Trial Court.** The finding of a trial court on an issue of fact where the evidence is conflicting, is binding upon the appellate court.

3. **FENCES: Statutory Fences: Division Fences not Statutory.** Where a fence is not a statutory one, either as to the character of its construction or the circumstances under which it was erected or maintained, the rights of the parties are not controlled by the statute in relation to division fences.

4. ————**: Partnership Fences: Cutting Hedge Fences: Damage to Crop.** In an action against defendant for cutting a hedge fence, plaintiff claimed that the fence belonged to him and that defendant had cut out large posts and left holes in the hedge, through which stock could go; but there was evidence sufficient to justify the finding that the hedge was a partnership fence between plaintiff's and defendant's land; that it needed trimming and that plaintiff was justified in cutting it to enable several rows of corn to grow on his land and that defendant had intended to trim it close and put wires along the fence when he was stopped by this lawsuit. *Held*, that the trial court was justified in finding that plaintiff was not damaged by the work of the defendant.

5. **PRACTICE**: Motion for New Trial: Newly Discovered Evidence. Where a motion for a new trial was filed on the same day the cause was tried, and the motion did not disclose or set out any newly discovered evidence, or the nature thereof, and no time was given by the court to file affidavits in support of the motion, and such affidavits were not filed until several weeks thereafter, the trial court did not commit error in overruling the motion.

Appeal from Polk Circuit Court.—*Hon. C. H. Skinker,* Judge.

AFFIRMED.

*Rechow & Pufahl* for appellant.

*L. Cunningham* for respondents.

GRAY, J.—Plaintiff and defendants were owners of adjoining tracts of land, separated by a fence on or near the line. The tracts were a half mile long east and west, and the east half of the fence was hedge and the west wire. The hedge was set out, and the other part of the fence erected about 1882, and by persons through whom the respective parties hereto claim title. On the 18th day of January, 1911, the defendants cut some hedge posts out of the fence and in so doing, threw some brush, trimmed from the hedge, on the growing wheat on plaintiff's land. The next day the plaintiff instituted this suit before a justice, alleging "that he has a hedge fence along the south side on the east half of said eighty acres that he was keeping for the purpose of growing hedge posts. The said fence is also a division fence between the plaintiff and defendants' lands and no notice of intention to have same removed has been given by either party. That the defendants wrongfully cut said hedge fence or part of the same on the 18th day of January, 1911, and threw the brush on the wheat of plaintiff and his tenant to his great damage in the sum of one hundred dollars."

The defendants answered, alleging that the fence was a division fence, and that they were the owners of a half interest therein; that the same had not been trimmed for many years and had grown to a height of from fifteen to twenty feet, and of a width of from ten to twenty feet; that the defendants were cutting, trimming and repairing their part of said fence, and cutting and removing posts therefrom, and denied that they were removing said fence, but averred that they were cutting, trimming and repairing the same.

The defendants were successful before a jury in the justice court, and plaintiff appealed. The cause was tried in the circuit court on the 29th day of May, 1911, before the court, and defendants were again successful and plaintiff appealed to this court.

The plaintiff contends that he is the absolute owner of the hedge fence; that it was set out in 1882 on his land and by a Mr. Went, who was at said time the owner of the plaintiff's tract; that the fence was all on his land and about three feet from the line, and that there was no substantial evidence to the contrary. The defendants contend that the fence was not set out by Went, but by Went and the Brown brothers, who were at the time the owners of the defendants' tract.

The plaintiff offered much testimony to support his theory. On the other hand, the defendants called Mrs. Shockley, who was formerly the wife of one of the Brown's, and she testified that she lived on the defendants' land at the time the fence was set out, and it was set out by her husband and his brother. Her testimony was supported by one of the Brown's who testified as follows: "I remember the hedge fence that stood out there on the south line of the Henry Went forty and between our land and his and my recollection is that Mr. Went and myself set it out as a partnership fence."

A Mr. Wilcox, at one time owned the plaintiff's land, and he was called by plaintiff as a witness in this

case.  On cross-examination he testified that while he owned the land he repaired the wire fence, and that it was a partnership fence between the lands of plaintiff and the defendants.  The plaintiff claimed the wire fence was a few feet south of the hedge fence, but there was testimony to the contrary.

Without further reviewing the evidence on this point, it is clearly apparent that under the rule declared by this court in King v. Railroad, 143 Mo. App. 279, 127 S. W. 400, and Link v. Jackson, 139 S. W. 588, the finding of the trial court is conclusive.

The plaintiff next claims that even though the court found that he only owned an interest in the fence with the defendants, still he was entitled to recover damages suffered by the acts of defendants in cutting and destroying the fence and putting the brush on his land.  The complaint filed with the justice alleged that the damages were suffered by plaintiff and his tenant, and the tenant testified that the growing wheat belonged to him.  There was no other testimony tending to show what interest, if any, the plaintiff had in the growing wheat.  The trial court was not advised whether the tenant paid cash rent or a part of the crop, and therefore, there was no evidence upon which to base any damages on account of the brush being placed on plaintiff's land, and the evidence showed that before the trial in the circuit court, the brush had all been removed, and it was not claimed that any damage had been done to the growing wheat on account thereof.

In disposing of the other part of the case, we must consider the fact that the fence was not a statutory one, either as to the character of its construction, or the circumstances under which it was erected or maintained, and therefore, the rights of the parties are not controlled by our statute in relation to division fences. [Kneale v. Price, 29 Mo. App. 227; McLean v. Berkabile, 123 Mo. App. 647, 100 S. W. 1109; Mackler v.

Cramer, 32 Mo. App. 542; same case, 48 Mo. App. 378.] In fact, the plaintiff's complaint alleges that the fence belonged to him, and he was keeping it for the purpose of growing hedge posts.

The defendants claimed they were not destroying the fence, but were trimming it and cutting out the posts. This was denied by plaintiff, and the testimony relating thereto may be summed up as follows: Wes Greable testified for plaintiff as follows: "There were a few posts left I suppose to tack wires to. There were posts left and very nearly trimmed up to the proper height and the proper distance apart. I have not been along there since the fence has been fixed and do not know whether it has been fixed in a good condition or not. It looked to me that they were not fixing the fence but were cutting out the posts and the fence was left so stock could get through. The posts they left there were small but might be used to fix the fence some. I do not know whether any stock got through there or not. I think the length of the fence was about four or five rods long. Some places the trees were close together and some places they were about four or five feet apart. It would be owing to what kind of a fence a man was going to put back whether he was damaged by some one else cutting the posts out."

The plaintiff testified: "They surely did not cut the fence for the purpose of trying to fix it as nobody on earth would have cut it that way in order to repair it. It looked to me like they had just slashed out the good posts. I was saving those posts for fence posts and intended to cut them when I got ready. I do not know whether they have fixed the fence or not as I have never been back there. I had intended to cut this hedge fence smooth to the ground and put up a wire fence when I was ready."

Vernon Fish, plaintiff's tenant, testified: "The way they were cutting the hedge did not look as though

they were fixing the fence but as though they were getting out the posts. Some of them they cut about a foot from the ground and some about three feet. They left a few of the small crooked ones. I suppose some people would call the cutting of the fence fixing it, but they cut some of the posts three feet high and some a foot and a half and some down to the ground. They left a few trees standing. I do not fix a hedge by trimming it and putting a wire or two up to let it grow, but I trim the fence to the ground and set the wire fence to one side and would not leave any posts sticking up when I trimmed the hedge.''

One of the defendants testified: ''The hedge was so that crops could not grow along the fence and was certainly damaging our land. If it did not damage it in any other way it takes about three rows of corn where the limbs spread out over the fence, and there are about four or five rows that won't make anything except nubbins. It is this way clear across the forty acres. We cut the posts out as has been stated, some close to the ground and some four feet from the ground. There were big holes where stock could get through before we cut the hedge. The trees were left high, some of them, so that we could stretch a wire to close up so that the hedge can grow and will keep out stock. The fence had grown up to a big height and needed trimming and we were getting the posts out of it and trimming it at the same time. We did not cut the fence to do any damage but we wanted to trim the fence and also get the posts out. We left the hedge in a condition so that we could fix it and were going to fix it if he had not stopped us from doing so. It was along in the winter when we cut the brush and we had no intention of leaving the brush on Mr. Johnson's land. We asked Mr. Fish afterward if he would object to us burning the brush on his side of the fence close up to the hedge so as to save us the trouble of throwing it over and he said we might do it. That was

when we were cutting the brush and some of it was on his side of the fence and some on our side.''

The other defendant testified: ''We were cutting some of the posts out and leaving the smaller ones so that we could plow up close to the fence. There are different ways of fixing a hedge fence. Sometimes they are fixed with wire and sometimes we cut the small trees down and put them in the holes. We aim to leave the fence here and were only trimming it down.''

If the hedge was twenty-five or thirty feet high and its limbs and brush extended over defendants' land so that it practically ruined a space ordinarily used in growing five rows of corn, and it was a fence in which they were interested, they certainly had the right to cut and trim it, and their act in so doing would not be a tort for which the plaintiff could maintain a suit for damages. It must not be overlooked that plaintiff testified that he intended to cut the hedge to the ground and put a wire fence in its place; that his tenant testified that some people, in trimming a hedge, cut it to the ground and put a wire fence by it, and the other witness for plaintiff testified that there were different ways of trimming a hedge, and that some persons left the stumps four feet high; that the defendants testified that they were cutting out some of the larger posts and leaving the smaller ones to which they intended to attach wires; that before they trimmed the fence it had large holes in it so stock could pass through, and it was their intention to put wires in the fence, and they had done so and stock could not get through. Under this evidence it was perfectly proper for the trial court to find that the plaintiff, who was only a part owner, was in no wise damaged by the work of the defendants.

We are not holding if plaintiff had a half interest in the hedge fence and the posts therein were valuable, that defendants could take and appropriate all of

them to their own use, and plaintiff would be without remedy, but this suit was brought on the theory that defendants had no interest in the fence, and therefore, no right to cut or trim the same, and not for the value of any posts made by the defendants while so cutting or trimming the hedge.

The plaintiff contends that the action of the court in refusing a new trial on his showing of newly discovered evidence, was erroneous. In answer to this contention, it is sufficient to say that the motion for new trial was filed on the same day the cause was tried, and did not disclose or set out the newly discovered evidence or the nature thereof, and no time was given by the court to file affidavits in support of the motion, and not until the 17th day of June were such affidavits filed. [King v. Gilson, 206 Mo. 264, 104 S. W. 52.]

While appellant has assigned as error the act of the court in rejecting certain testimony, we do not deem it necessary to discuss the assignment, further than to say that we do not find that the court erred in excluding the same. The judgment will be affirmed. All concur.