COLORADO COURT OF APPEALS     **2016COA131**

Court of Appeals No. 15CA1505
City and County of Denver District Court No. 15CV32088
Honorable Morris B. Hoffman, Judge

Keith Love and Shannon Love,

Plaintiffs-Appellants,

v.

Mark Klosky and Carole Bishop,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE TAUBMAN
Freyre, J., concurs
Dailey, J., specially concurs

Announced September 8, 2016

Polsinelli PC, Bennett L. Cohen, William R. Meyer, Denver, Colorado, for
Plaintiffs-Appellants

The Overton Law Firm, Thomas J. Overton, Richard J. Gleason, Lakewood,
Colorado, for Defendants-Appellees

¶ 1     This case presents a novel question of standing: in the case of a tree straddling a boundary line, can the landowner with the larger portion of the tree on his or her property cut it down or can the landowner with the smaller portion of the tree on his or her property insist that the tree remain standing?

¶ 2     This appeal involves the competing rights of adjoining landowners — plaintiffs, Keith and Shannon Love (the Loves), and defendants, Mark Klosky and Carole Bishop (the Kloskys) — as to a tree at least seventy years old whose trunk straddles their common boundary.[1]  The Kloskys, claiming that the tree is a nuisance, wish to cut it down.  The Loves wish to save the tree.  The trial court, bound by the one Colorado case on point, *Rhodig v. Keck*, 161 Colo. 337, 421 P.2d 729 (1966), entered judgment in favor of the Kloskys.

¶ 3     Under the majority rule on ownership of boundary trees, neither property owner can cut down a tree that straddles the shared boundary line.  *Scarborough v. Woodill*, 93 P. 383, 383-84

---

[1] Bishop initially purchased the property, and Klosky and Bishop later married.  Although both briefs refer to Klosky and Bishop as "the Bishops," because Klosky's name appears first on the case caption, we refer to Klosky and Bishop as "the Kloskys" for readability.

(Cal. Dist. Ct. App. 1907). However, under the minority rule in *Rhodig*, the landowner of the property where the tree was first planted can cut the tree down, over the other, encroached-on landowner's objections, unless the other landowner can prove that the tree was jointly planted, jointly cared for, or treated as a partition between the properties. 161 Colo. at 340, 421 P.2d at 731. Because, like the trial court, we are also bound by *Rhodig*, we affirm its judgment.

¶ 4 However, we explain why the supreme court may wish to reconsider its holding in *Rhodig*: (1) *Rhodig* is the clear minority rule among jurisdictions addressing the issue and (2) the court's opinion in *Rhodig* was based on a misreading of a Nebraska case on which it relied.

## I. Background

¶ 5 As described above, the Loves and the Kloskys are neighbors whose properties share a common boundary. Straddling their mutual property line is a healthy, mature, seventy-foot catalpa tree. Catalpa trees are deciduous trees with large, heart-shaped leaves. In the spring, they produce large white or yellow flowers. In the fall,

they bear long fruits that resemble slender bean pods.  The tree is seventy to ninety years old.

¶ 6    At the ground level, seventy-four percent of the tree's trunk is on the Kloskys' property, and twenty-six percent of the tree's trunk is on the Loves' property.  At the four-foot level, eighty-six percent of the tree's trunk is on the Kloskys' property, and fourteen percent of the tree's trunk is on the Loves' property.  While the trial court concluded that the tree likely started its growth on the Kloskys' property, the tree has been on or over the property line for at least forty years.  Therefore, the tree trunk straddled the property line when Bishop purchased her property in 1986 and when the Loves purchased their property in 2005.

¶ 7    The Kloskys wish to cut the tree down because they claim it is a nuisance to rake the tree's leaves and pods.  The Loves wish the tree to remain because they claim it provides them with shade, beauty, and comfort and enhances their standard of living and the value of their home.

¶ 8    In its bench ruling, the court considered the common law and noted the majority rule.  The trial court explained that it wanted to

save the tree but, bound by the minority rule in *Rhodig*, must allow the Kloskys to cut it down:

> [T]he law often requires me [to] do things I don't want to do. If I [were] the emperor of Washington Park, I would, I would order this tree not cut down. It's a beautiful tree, it's a great tree. But that's not my role. I'm not the emperor of Washington Park. I have to follow what I think the law is, and my conclusion is that the Loves have not met their burden of proof [under *Rhodig*] . . . .

¶ 9    The court, following *Rhodig*, concluded that the Loves had not proven that they were tenants in common of the tree. The trial court stayed the effect of its decision pending all appeals.

¶ 10    The Loves raise two contentions on appeal: (1) the trial court erred in concluding that they did not jointly care for the tree as required by *Rhodig* and (2) *Rhodig* should be reconsidered by the supreme court. We address each contention in turn.

¶ 11    The Loves raised a third contention during oral argument — that *Rhodig* did not create a new exception to the majority common law governing boundary trees because it is not a boundary tree case. However, we conclude that the Loves did not raise this argument before the trial court or in their opening brief, and therefore, we do not address. *See Bumbal v. Smith,* 165 P.3d 844,

4

847-48 (Colo. App. 2007) (an appellate court will not consider arguments raised for the first time during oral argument).

## II. Joint Care of the Tree

¶ 12    Although the Loves concede that *Rhodig* binds us, they contend that the trial court erred by concluding that they did not prove that they jointly cared for the tree. However, because the Loves failed to designate the relevant trial testimony as part of the record on appeal, we have insufficient information to review the trial court's factual findings and conclusions and thus must uphold its decision.

### A. Standard of Review

¶ 13    We review de novo a lower court's conclusions of law. *S. Ute Indian Tribe v. King Consol. Ditch Co.*, 250 P.3d 1226, 1232 (Colo. 2011). We set aside a trial court's factual findings only when they are "so clearly erroneous as to find no support in the record." *Id.* (quoting *People in Interest of A.J.L.*, 243 P.3d 244, 250 (Colo. 2010)).

### B. Applicable Law

¶ 14    As stated above, under the majority rule, neither property owner can cut down a tree that straddles the shared boundary line. *Scarborough*, 93 P. at 383-84. However, in Colorado, boundary

trees are held in common by both landowners only if they were jointly planted, jointly cared for, or were treated as a partition between the adjoining properties. *Rhodig*, 161 Colo. at 340, 421 P.2d at 731.

## C.   Analysis

¶ 15   The trial court concluded that the catalpa tree was not jointly planted, jointly cared for, or treated as a partition. The Loves only appeal the court's determination that the tree was not jointly cared for.

¶ 16   While the Loves cast the issue as a pure legal question of whether the trial court correctly interpreted the phrase "jointly care for," we agree with the Kloskys that the trial court's interpretation of that phrase must be examined in the context of the evidence presented regarding the issue of joint care.

¶ 17   Here, the Loves designated none of the trial testimony as part of the record on appeal. Instead, they only provided a transcript of the closing arguments and the trial court's oral findings from the bench. The Loves' description of the evidence in their opening brief and references to comments the Loves made in closing argument about the evidence are not a substitute for a transcript and record.

6

Therefore, we have no opportunity to review the conflicting evidence that the parties presented at trial concerning the actions taken by the parties to care for the tree. *See Northstart Project Management, Inc. v. DLR Group, Inc.,* 2013 CO 12, ¶¶ 13-17, 295 P.3d 956, 959-60.

¶ 18    The trial court held that the fact that the Loves cut a branch off the tree to make room for a swing set, incidentally watered the tree when watering their own lawn, and raked the leaves in their yard was insufficient to constitute joint care for the tree. We presume that the trial court's findings and conclusions are supported by the evidence when the appellant has failed to provide a complete record on appeal. *People v. Morgan,* 199 Colo. 237, 242-43, 606 P.2d 1296, 1300 (1980). Therefore, without the full record on the issue, we cannot properly determine whether the trial court correctly decided the issue of joint care for the tree and must uphold its determination.

III.    Reconsideration of *Rhodig*

¶ 19    The Loves, acknowledging that only the supreme court can overturn *Rhodig*, nevertheless argue that (1) *Rhodig* is the clear minority rule among jurisdictions addressing the issue and should

be reconsidered by the supreme court and (2) the court's opinion in *Rhodig* was based on a misreading of a Nebraska case on which it relied. We agree with the Loves that the supreme court may wish to reconsider *Rhodig.* Before we address the Loves' two contentions, we examine the *Rhodig* decision more closely.

## A. The *Rhodig* Decision

¶ 20     In *Rhodig,* the plaintiffs planted one tree wholly on the defendant's property, and three other trees grew on both properties. 161 Colo. at 340, 421 P.2d at 730-31. Twenty years later, when the defendant removed the trees, the plaintiffs sought damages. *Id.* Logically, the court held that the plaintiffs could not affix something to their neighbor's land and then claim ownership rights without some agreement, right, estoppel, or waiver. *Id.* The court, however, stated a rule that governed *all* boundary trees: boundary trees are held as common property only if the landowners jointly planted, jointly cared for, or treated the trees as a partition between the properties. *Id.* No Colorado case has interpreted or cited *Rhodig* since the supreme court set forth this rule in 1966.

8

¶ 21    Notably, two justices dissented in *Rhodig* and would have instead applied the majority rule.  *Id.* at 341, 421 P.2d at 731 (Frantz, J., dissenting).

### B.    *Rhodig* as a Minority Rule

¶ 22    *Rhodig* is a minority rule.  Only five states follow a similar rule and hold that a tree, shrub, or other plant on a boundary line is the common property of adjoining landowners, or at least the subject of joint duties, only where they have so treated it by express agreement or by their course of conduct.  *See Holmberg v. Bergin,* 172 N.W.2d 739 (Minn. 1969); *Johnson v. Fiala,* 143 S.W. 537 (Mo. Ct. App. 1912); *Garcia v. Sanchez,* 772 P.2d 1311 (N.M. Ct. App. 1989); *Brown v. Johnson,* 73 S.W. 49 (Tex. Civ. App. 1903); *Robins v. Roberts,* 15 P.2d 340 (Utah 1932).

¶ 23    On the other hand, courts in twenty-one states hold that a tree, shrub, or other plant on a boundary line belongs to both landowners as tenants in common.  *See Young v. Ledford,* 37 So. 3d 832 (Ala. Civ. App. 2009); *Fleece v. Kankey,* 72 S.W.3d 879 (Ark. Ct. App. 2002); *Scarborough,* 93 P. at 383; *Robinson v. Clapp,* 32 A. 939 (Conn. 1895); *Quillen v. Betts,* 39 A. 595 (Del. Super. Ct. 1897); *Lemon v. Curington,* 306 P.2d 1091 (Idaho 1957); *Ridge v. Blaha,*

520 N.E.2d 980 (Ill. App. Ct. 1988); *Luke v. Scott,* 187 N.E. 63 (Ind. Ct. App. 1933); *Harndon v. Stultz,* 100 N.W. 329 (Iowa 1904); *Wideman v. Faivre,* 163 P. 619 (Kan. 1917); *Blalock v. Atwood,* 157 S.W. 694 (Ky. 1913); *Lennon v. Terrall,* 244 N.W. 245 (Mich. 1932); *Griffin v. Bixby,* 12 N.H. 454 (1841); *Dubois v. Beaver,* 25 N.Y. 123, 1862 WL 4733 (1862); *Pinkerton v. Franklin Twp. Bd. of Trs.,* No. 83AP-946, 1984 WL 13994 (Ohio Ct. App. July 17, 1984); *Higdon v. Henderson,* 304 P.2d 1001 (Okla. 1956); *Cathcart v. Malone,* 229 S.W.2d 157 (Tenn. Ct. App. 1950); *Skinner v. Wilder,* 38 Vt. 115, 1865 WL 2196 (1865); *Happy Bunch, LLC v. Grandview N., LLC,* 173 P.3d 959 (Wash. Ct. App. 2007); *Montgomery v. Mahler,* 546 N.W.2d 886 (Wis. Ct. App. 1996); *see also* F.S. Tinio, Annotation, *Rights and Liabilities of Adjoining Landowners as to Trees, Shrubbery, or Similar Plants Growing on Boundary Line,* 26 A.L.R.3d 1372 (1969).

¶ 24     Under this rule, "each of the landowners upon whose land any part of a trunk of a tree stands has an interest in that tree, a property in it, equal . . . to, or perhaps rather identical with, the part which is upon his land." *Robinson,* 32 A. at 942. Neither property owner can cut down the tree without the consent of the other, nor can either cut away the part that extends into his or her

land if that would thereby injure the tree. *Scarborough*, 93 P. at 383. A court may issue an injunction upon the complaint of a landowner against the adjoining landowner to prevent the destruction of a boundary tree. *Harndon*, 100 N.W. at 330. Trial courts have broad discretion to enter such injunctions and can modify them to suit the facts and circumstances of each case. *Robinson*, 32 A. at 942. For example, the court may permit a landowner who wishes to cut the tree down to prune the tree to remove any dangerous limbs or may provide such other relief as deemed reasonable. *See Ridge*, 520 N.E.2d at 984.

¶ 25 Nevertheless, if one cotenant cuts down the tree without the permission of the other, the other cotenant has an action for trespass and may recover damages. *Dubois*, 25 N.Y. at 127-28. In such event, a court may calculate damages based on the value of the cut tree, apportioned according to the percentage of the tree that was located on the injured landowner's property. *Happy Bunch*, 173 P.3d at 964.

¶ 26 When the Colorado Supreme Court decided *Rhodig*, courts in at least fourteen other jurisdictions had adopted the majority rule, while courts in only four had adopted the minority rule. Since the

*Rhodig* decision, courts in eight jurisdictions have decided boundary tree cases. Of those eight courts, only two have agreed with *Rhodig.* Of the remaining six which have adopted the majority rule, courts in two jurisdictions, Illinois and Washington, have criticized the *Rhodig* decision. The Illinois case, *Ridge*, criticized *Rhodig* for misinterpreting the cases upon which it relied, and the Washington case, *Happy Bunch*, asserted that *Rhodig*'s policy was unsound because the *Rhodig* court created a new theory of adverse possession. *Happy Bunch*, 173 P.3d at 965.

C. *Rhodig* Misinterpreted Cases upon Which It Relied

¶ 27 The *Ridge* court criticized *Rhodig* as relying on cases that did not support its decision. 520 N.E.2d at 983. The *Rhodig* court relied on *Weisel v. Hobbs*, 294 N.W. 448 (Neb. 1940), and *Hancock v. Fitzpatrick*, 170 S.W. 408 (Mo. Ct. App. 1914). In *Weisel*, 294 N.W. at 452, the plaintiff sought to enjoin his neighbor from destroying a boundary tree. *Id.* However, the tree was located entirely on the defendant's property. *Id.* Nevertheless, the *Weisel* court found that since both the plaintiff and the defendant had gone to considerable lengths to care for the tree, the plaintiff had "an interest in the tree sufficient to demand that the owner of the

12

other portion shall not destroy the tree." *Id.* *Weisel* thus can be interpreted as holding that an agreement or course of conduct can give one party a protectable interest even if the tree is not actually on a boundary line, but the decision does not hold that such an agreement is required when a tree is actually on the boundary of two adjoining properties.

¶ 28 Likewise in *Hancock*, 170 S.W. at 409, as in *Weisel*, the court held that an agreement between property owners gave them co-ownership rights, but the court there did not address whether boundary line trees are jointly owned in the absence of an agreement. *See Ridge*, 520 N.E.2d at 983.

¶ 29 As the Loves have acknowledged, *Rhodig* controls this case. Nevertheless, we conclude the supreme court may wish to reconsider *Rhodig* based on the many jurisdictions adopting the majority rule and the two decisions criticizing it. If the supreme court reconsiders *Rhodig* and adopts the majority rule, the court could remand this case to the trial court to issue an injunction to prevent the Kloskys from cutting down the tree. The injunction could include a provision that the Loves would be responsible for all

or some of the maintenance of the tree, including raking leaves and pods and trimming the tree's branches.

¶ 30 The special concurrence states that we should be reticent in urging the supreme court to reconsider the issue in this case in light of the doctrine of stare decisis. However, divisions of our court have urged the supreme court to reconsider various issues consistent with the tenets of C.A.R. 35(e) (stating that an opinion may be published when it "directs attention to the shortcomings of existing common law"). *See People v. Theus-Roberts*, 2015 COA 32, ¶¶ 41, 47, ___ P.3d ___, ___ (Berger, J., specially concurring) (writing "separately to express my concerns" and recognizing that while the court is "bound by the supreme court's prior decisions," "I believe it is important to note how much time has elapsed since the supreme court last visited" the subject of reliability of eyewitness identification); *Harner v. Chapman*, 2012 COA 218, ¶ 3, 350 P.3d 303, 304-05 (respectfully urging the supreme court to address the continued viability of *Weiss v. Axler*, 137 Colo. 544, 551, 328 P.2d 88, 92 (1958), regarding the burden of proof in res ipsa loquitur cases in light of CRE 301), *rev'd*, 2014 CO 78, ¶ 18, 339 P.3d 519, 523-24 (following the Court of Appeals suggestion, holding *Weiss*

was wrongly decided and, accordingly, reversing); *People v. Stackhouse*, 2012 COA 202, ¶ 33, ___ P.3d ___, ___ (Gabriel, J., specially concurring) ("I believe that this case provides an appropriate vehicle to allow our supreme court to reconsider *Anderson* [*v. People*, 176 Colo. 224, 227, 490 P.2d 47, 48 (1971)], in light of developments in the law in the decades since that case was decided [regarding waiver of claim that the right to public trial was violated]."), *aff'd*, 2015 CO 48, ¶ 33, ___ P.3d ___, ___; *People v. Roldan*, 353 P.3d 387, 391 (Colo. App. 2011) (Bernard, J., specially concurring) (writing "separately to express my hope that our supreme court will review . . . whether [Colorado's] strict remedy of automatic reversal . . . should be replaced by a remedy based on harmless error analysis"), *rev'd*, 2014 CO 22, 322 P.3d 922 (citing *People v. Novotny*, 2014 CO 18, ¶ 27, 320 P.3d 1194, 1202).

¶ 31  At oral argument, the Kloskys agreed that the trial court's stay should remain in effect pending any decision by the supreme court or the Loves' failure to timely petition for certiorari. Accordingly, we continue in effect the trial court's stay. *See* C.A.R. 8.

## IV. Conclusion

¶ 32  The trial court's judgment is affirmed.

JUDGE FREYRE concurs.

JUDGE DAILEY specially concurs.

JUDGE DAILEY, specially concurring.

¶ 33    I concur in the affirmance of the trial court's judgment. I do not, however, perceive that the issue in this case is any more deserving of supreme court reconsideration than any other issue it has decided.

¶ 34    As the majority points out, divisions of this court and members of this court have, on occasion, recommended reconsideration of an issue by the supreme court. But those occasions are the exception, rather than the rule. We normally do not tell the supreme court what its business should be, unless we have a compelling reason for doing so.

¶ 35    Pointing out a shortcoming in the common law may be a compelling reason. *Cf.* C.A.R. 35(e) (stating that a court of appeals opinion may be published when it "directs attention to the shortcomings of existing common law"). But a simple disagreement about whether the case was rightly decided is not. *See Randall v. Sorrell*, 548 U.S. 230, 244 (2006) ("Departure from precedent is exceptional, and requires 'special justification.'" (quoting *Arizona v. Rumsey*, 467 U.S. 203, 212 (1984))); *People v. Blehm*, 983 P.2d 779, 788 (Colo. 1999) ("[A] court will follow the rule of law it has

17

established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions *and* that more good than harm will come from departing from precedent.") (emphasis added); *see also Alleyne v. United States*, 570 U.S. ___, ___, 133 S. Ct. 2151, 2164 (2013) (Sotomayor, J., concurring) ("Of course, under our doctrine of *stare decisis*, establishing that a decision was wrong does not, without more, justify overruling it."); *Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 636 (1974) (Stewart, J., dissenting) ("A basic change in the law upon a ground no firmer than a change in our membership invites the popular misconception that this institution is little different from the two political branches of the Government. No misconception could do more lasting injury to this Court and to the system of law which it is our abiding mission to serve."); *People v. Novotny*, 2014 CO 18, ¶ 25 ("Among the kinds of considerations we and the United States Supreme Court have identified as impacting a decision to depart from prior precedent are the practical workability of that decision; the extent to which a departure would work a hardship or inequity on those who have relied on and ordered their behavior around the prior ruling; and, importantly, whether the principles

18

upon which the ultimate holding is premised, or related legal principles, have themselves developed in such a way as to leave the prior ruling without support.").

¶ 36    Here, the majority urges reconsideration of the *Rhodig* decision based on its view that *Rhodig* was wrongly decided and was (and remains) against the weight of other states' authority.  In my view, these circumstances do not warrant the unusual step of recommending that the supreme court overrule one of its prior rulings.  *See Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 652 (Colo. 2005) (Coats, J., dissenting) ("While the choice of other jurisdictions may be some cause for the appropriate branch of this state's government to carefully examine the wisdom of its public policy, it most certainly is not a ground, in itself, for overturning our own established precedent.  And the majority's clear preference for a change in policy hardly amounts to an assertion that long-established law has for some reason become unworkable."); *see also Payne v. Tennesee*, 501 U.S. 808, 827 (1991) ("*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters

reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.").

¶ 37     At the end of the day, the *Rhodig* rule identifies one winner in this type of dispute, whereas the majority's preferred rule identifies another.  Changing winners is not a sufficient reason for overruling prior precedent.  Nor is the passage of time, unless in the interim period (1) the legal underpinnings of the case has been eroded or (2) the decision has proved unworkable.  I do not perceive either to be the case here.